# Johnston *v.* Jones.

*Bill in Equity for Specific Performance of Contract for Sale of Lands.*

1. *Statute of frauds; contract for sale of lands.*—A deed drawn and executed with the knowledge of both parties, with a view to the consummation of the contract, embodying in itself the substance, though not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the land with sufficient certainty, though not delivered, delivery being postponed until the happening of some future event (as the payment of the cash installment), is a note or memorandum of the contract sufficient to satisfy the words, the spirit, and the purposes of the statute of frauds (Code, § 1732).

[Johnston v. Jones.]

2. *Contract evidenced by undelivered deed and prior agreement.*—Where one of two joint owners of a tract of land wrote to an agent, authorizing him to sell on certain specified terms; and the agent having negotiated a sale on the terms stated, a deed was prepared and signed by both of the joint owners, but was not signed by the wife of the party who had authorized the sale, and was not accepted because of defects in its execution; *held*, on bill filed by the purchaser for specific performance, that the deed did not constitute the contract between the parties, as being in the nature of a revocable option, and the only writing which made the contract binding on the party who gave no authority in writing to the agent, but only completed and supplied the necessary evidence of the prior verbal contract.

3. *Laches in seeking performance.*—The specific performance of a contract for the sale of lands will not be decreed at the instance of the purchaser, when he has been guilty of *laches,* or unnecessary delay; but, under the facts shown by the record in this case, which the court states, the complainant has not been guilty of *laches,* and the delay has been caused by the fault of the defendants.

4. *Specific performance against party who has offered to perfsrm* —Under a bill against the two joint owners of a tract of land, for the specific performance of a contract to sell and convey, a deed having been prepared and tendered, which was properly executed by one of them, but was not accepted because of defective execution by the other; the former can not resist a decree for specific performance, on the ground that he was not in default, but had offered full performance on his part.

5. *Variance between allegations and proof*—The rule of. chancery pleading and practice which requires a substantial correspondence of the pleadings and proof, is particularly strict in cases for the specific performance of contracts; and a variance of one year in the date of the contract, as in this case, is fatal to relief, unless remedied by amendment.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 8th February, 1887, by W. H. Williams and A. H. Jones, against C. A. Johnston and H. R. Johnston, and sought the specific performance of a contract for the sale of a tract or lot of land, which the complainants claimed to have bought from the defendants. The land was a lot in Birmingham, one hundred feet square; the agreed price being $16,000, of which $4,000 was to be paid in cash. The terms of the contract were negotiated between said W. H. Williams as purchaser, who did not at the time disclose the interest of A. H. Jones, his co-complainant; and W. C. Smith, acting as agent for the defendants, under written authority and instructions from said C. A. Johnston. The terms of sale having been agreed on, and the purchasers desiring to have the property divided, two deeds were prepared and forwarded by Smith to C. A. Johnston, for execution; and these deeds were returned to Smith, signed by H. R. Johnston and wife and by C. A. Johnston, and acknowledged before a clerk of the Chancery Court in

Mississippi, where the parties resided. Smith tendered the deeds to Williams, who, acting under the advice of counsel, declined to accept them, because they were not signed by the wife of C. A. Johnston, who was then in a lunatic asylum, and because they were not acknowledged before a proper officer. After some further correspondence, the deeds were withdrawn by the defendants, and they refused to consummate the contract. The defendants pleaded the statute of frauds, and set up other defenses in their answer. The court overruled the plea, and, on final hearing on pleadings and proof, rendered a decree for the complainants; and this decree is here assigned as error. By consent, cross-assignments of error were made by the complainants, because the court, while requiring them to pay interest on the purchase-money, did not allow them rent for the property.

WEBB & TILLMAN, and WARD & HEAD, for appellants.

KNOX & BOWIE, contra.

CLOPTON, J.—The evidence establishes beyond a reasonable controversy, that a contract for the sale of the land mentioned in the bill, to appellees, was made by W. C. Smith, as the agent of appellants, at the price, and upon the terms substantially corresponding with the allegations of the bill as amended. There is no contention that the contract is not plain and certain in its terms, fair, just and reasonable in its provisions, and founded on an adequate consideration. Neither is there any pretense that it was obtained by any undue advantage, accident, or surprise, or that it is affected by any inequitable feature. The contestation of appellants is, that it is not a valid contract because not in writing; and if valid, that complainants, who are appellees, seeking its specific execution, have deprived themselves of a claim to equitable interposition, by unjustifiable default and inexcusable delay in performing the contract on their part, which now causes its specific performance to work hardship or injustice to defendants.

The first material question is, whether the facts constitute a valid contract under the statute of frauds. The statute declares, that "every contract for the sale of lands, or of any interest therein, except leases for a term not longer than one year, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, and

[Johnston v. Jones.]

subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing; unless the purchase-money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."—Code, 1886, § 1732. The defendants were joint owners of the land; and it is not claimed that H. R. Johnston ever authorized, in writing, Smith to sell the same, or ever signed any contract, note or memorandum, except the conveyances hereafter referred to. Passing, therefore, the letter of authority given Smith by C. A. Johnston, and the telegrams and correspondence which passed between them, the sufficiency of the conveyances to withdraw the contract from the operation of the statute of frauds, is directly brought to consideration. Whether a deed, prepared, signed and acknowledged, for future delivery, answers the requirements of the statute, was fully considered in *Jenkins v. Harrison*, 66 Ala. 345. After an exhaustive discussion, and a review of the authorities, the conclusion of the court is expressed as follows: "A deed, drawn and executed with the knowledge of both parties, with a view to the consummation of the contract of sale, which, in itself and of itself, embodies the substance, though not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the lands, though not delivered, and its delivery postponed until the happening of some future event, is a note or memorandum of the contract sufficient to satisfy the words, the spirit, and the purposes of the statute of frauds." In the present case, the deeds were prepared by direction of C. A. Johnston, and sent to him. They were executed and acknowledged by both defendants, and the wife of H. R. Johnston, and forwarded to the Alabama State Bank at Birmingham, Alabama, where the land is situated, with directions to deliver them to complainants on the cash payment being made, and the notes for the deferred payments executed. They describe the land, name the parties, and express the consideration, and all the details and terms of the contract, plainly and definitely. On the authority of *Jenkins v. Harrison, supra*, we hold that the deeds, having been signed and acknowledged by the vendors, with a view to the consummation of the contract of sale, and sent to the bank to be delivered on the happening of a future event, withdraw the contract from the operation of the statute of frauds.

The defendants further contend, that if the deeds avoid

19

the operation of the statute of frauds, they should be regarded as constituting the only contract, without reference to any preceding negotiations or transactions; and so regarded, they merely constitute an offer to sell the property to complainants upon the terms stated therein—an option, for which no consideration having been paid, defendants had the right to revoke, and did revoke before acceptance. This position is untenable. By the letter of September 16, 1886, C. A. Johnston authorized Smith to sell the lot of land, at a price, and upon terms stated therein, which correspond with the aggregate price, and the terms expressed in the deeds. Smith proposed to sell to Williams, at the price, and upon the terms stated in the letter, who accepted the offer, only modifying it by the request that two deeds be made dividing the lot in a designated manner. This modification was consented to by Johnston, when communicated to him. Under these circumstances, the preparation, execution and acknowledgment of the deeds were tantamount to ratification of Smith's contract of sale, and related to the time when there was a concurrence of the minds of the contracting parties. The deeds did not constitute the contract, but supplied the evidence of a previously completed oral contract, which only remained to be reduced to writing, and were intended as the execution thereof.

The further defense is, that complainants delayed performance of the contract of sale, without excuse, and thereby authorized defendants to treat it as rescinded, and to recall the conveyances. Time may be regarded of the essence of a contract for the sale of land, when a large cash payment is to be made, and the deferred payments bear interest. It may be conceded, that in such case a court of equity will refuse to decree specific performance, if there is unjustifiable default, or inexcusable negligence in performing the contract, on the part of the purchaser. He is required to be desirous, ready, and prompt to perform.

The question then is, who was at fault for the postponement of performance? The evidence clearly shows, that the first default was on the part of defendants in sending conveyances without C. A. Johnston's wife's relinquishment of dower, and without any explanation why she did not sign them. In the absence of an express agreement, the parties are presumed to contract with reference to an unincumbered and indefeasible legal estate, and complainants had the right to require deeds conveying such estate.—*Goodlet v. Hansell*,

[Johnston v. Jones.]

66 Ala. 151. The time of sending the conveyances to the bank was peculiarly within the knowledge of defendants, and if they wished to place complainants in default, it was their duty to notify them of the fact. Immediately on receiving information, Williams promptly went to the bank, inspected the deeds, and made objections thereto, that they were defectively executed by C. A. Johnston, and that his wife had not joined in their execution. They were signed by C. A. Johnston, in Mississippi, and acknowledged in that State before a clerk of the Chancery Court, who is not authorized by our statute to take acknowledgments of deeds when executed without the State.—Code, 1886, § 1800. Though, having an attesting witness, the deeds may operate to pass the legal title, the objections can not be considered as not made in good faith, when the attorneys who prepared them by direction of Johnston, expressed the opinion that the objections were well founded. At this time, C. A. Johnston was in the city of Washington, and, on being informed of the objections, wrote that he could not obtain his wife's signature because of her mental disability, and suggested that the matter be held up until his return to Birmingham about the 4th of November, when he would stop on his way home. He arrived in Birmingham on the second of November, two days prior to the appointed time. Williams was informed on the third of his arrival, when he immediately went to Birmingham on the fourth, and found that Johnston had left the day preceding. Up to this date, there can be no pretense that the complainants were guilty of *laches*, or unnecessary delay. Williams went that night to Tennessee on important business, having first endeavored to see the attorney of Johnston, and failed; he returned on the seventh, and after having an interview with the attorney whom Johnston had consulted, expressed a willingness to waive, under the circumstances, the signature of Mrs. Johnston, if he would properly acknowledge the execution of the conveyance, and so informed Smith, and requested him to notify Johnston. The complainants were certainly entitled to a reasonable time to determine whether they would accept the conveyance without the relinquishment of dower. On the eighth day of November, the deeds were recalled by defendants, without further response or notice to complainants. On this state of the facts, it can not be reasonably said that the complainants were at fault. They were prepared to make the cash payment, and constantly pressed the closing of the

contract, while the defendants not only acquiesced, but suggested the delay.

It is further insisted that the deeds having been properly executed and acknowledged by H. R. Johnston and his wife, the complainants were bound to accept them as performance of the contract on his part; and that having refused to do so, the court will not decree specific performance by him. The contract of sale was joint, and the deeds were jointly executed by the defendants. The complainants could not accept them as performance by one, without also accepting them as performance by the other. H. R. Johnston concurred in recalling the deeds, and now refuses to perform the contract under any circumstances. Though he had properly executed and acknowledged the deeds, complainants' declination to accept them under the circumstances, furnished no ground to treat the contract as rescinded, and no excuse for recalling them from the bank.

But the bill avers that the contract of sale was made September 30, 1885, while the proof shows that it was made September 30, 1886. There is no class of cases, in which correspondence between the allegations of the bill and the proof is more rigidly exacted, than in suits for the specific performance of contracts. The allegation of the time when the contract was made is descriptive of that which is material, and the variance between the allegation and proof is fatal, without an amendment of the bill. For this the decree must be reversed.

There are no averments in the bill on which a claim for the allowance of rents can be founded, and it is therefore unnecessary to consider this question.

The complainants can take nothing by their assignments of error.

Reversed and remanded.