44 So.2d 4

**STICKNEY et al. v. HAAS.**

I Div. 368.

Supreme Court of Alabama.

Feb. 2, 1950.

I. 252 Ala. 513.

McCorvey, Turner, Rogers, Johnstone & Adams and Johnston, McCall & Johnston, all of Mobile, for appellants.

240

Inge, Twitty, Ambrecht & Jackson, of Mobile, for appellee.

FOSTER, Justice.

· The question on this appeal is whether the demurrer filed by appellants to a bill for specific performance was properly overruled.

The substance of the facts alleged in the bill is that on and prior to January 23, 1946, there was a house and lot in Mobile owned by three parties, Anna B. Stickney, Norma McAndrews and N. P. Boulet. They were all married: the sisters lived in Mobile and their brother, N. P. Boulet, lived in Memphis, Tennessee. The bill alleges that on that date the appellee, through a real estate broker, made an offer in writing to purchase said property for a cash consideration of $9500.00, which offer in writing was accepted in writing by the respondents Anna B. Stickney and Norma McAndrews, and respondent N. P. Boulet accepted the same by telegram on the 18th of January, 1946, which was several days prior to the day when the formal offer in writing was made. The bill does not allege that the respective husbands of Anna B. Stickney and Norma McAndrews gave their written consent for their respective wives to make the contract. The bill then alleges that pursuant to said agreement the real estate broker prepared a deed designed to convey said property to appellee and that said deed was duly executed by Anna B. Stickney and Norma McAndrews and their respective husbands, and that the same was then forwarded by said broker to N. P. Boulet at Memphis, Tennessee, and on information and belief it is alleged that he and his wife duly executed said deed. The complaint then alleges that subsequent to the execution of the deed and prior to its delivery an altercation arose between the three respondent owners of said property as to the proposed division of the proceeds of the sale and that on finding themselves in a controversy with reference thereto they each declined to comply with the agreement to sell and have failed and refused and continue to fail and refuse to do so. Proper allegation is made as to the offer of complainant to

perform, and other allegations unnecessary to mention in view of the contentions made on this appeal.

The reply brief of appellants has eliminated some of the matters which have been argued in appellee's briefs and confines the questions to a certain number of contentions made in serial form and distinctly repudiates any claim that the contract sought to be specifically performed is void under the statute of frauds, and therefore eliminates all contention with reference to the statute of frauds.

We think that in view of the conclusion which we have reached with respect to this matter it will be advisable for us to first consider the fourth of the contentions of appellants' counsel set forth in said series above mentioned. That is stated to be that the mere execution of the deed of conveyance of real property by the owners without any delivery of such deed cannot create a binding obligation upon them to sell such property to the grantee named in said conveyance, in the absence of some valid contract to sell existing independently of such deed. We wish at this time to eliminate from consideration any question which may arise as to the sufficiency of the bill in not setting out in more detail the terms of the proposal of complainant to purchase the property, which was in writing and which was accepted in writing by the two married women,—a copy of that contract is not set out.

No question is raised as to the failure to set out the terms of the deed which is alleged to have been executed by the two married women, their husbands and their brother and his wife. So that for this discussion, we will assume that both of those instruments are sufficient in every respect if they were sufficiently executed.

The effect of the failure to deliver the deed in consummation of an imperfect agreement for its sale has been treated principally in respect to the statute of frauds in cases which have dealt with that subject. That is upon the idea that if a contract for the sale and purchase of certain real estate is entered into without complying originally with the statute of frauds, whether a deed subsequently executed, but not delivered, constitutes such a compliance as would make the original verbal contract enforcible by specific performance in equity.

The authorities have taken conflicting views with respect to that question and while we do not have here exactly that question, the views manifested and discussed in those cases are pertinent to the question which we do have. The contrariety of opinion is set forth in the text of 49 Am.Jur. 692 to 695, sections 390 and 391, and in 145 A.L.R. 1024, annotating (1014) the case of Kludt v. Connett, 350 Mo. 793, 168 S.W. 1068; Clay v. Reynolds, 169 Okl. 416, 37 P.2d 244, 100 A.L.R. 196; 27 Corpus Juris 300; 37 Corpus Juris Secundum, Frauds, Statute of, § 173, p. 650.

It will be seen by a study of those authorities and the cases cited that a majority view, although it is in some instances called the minority, is in accord with our case of Jenkins v. Harrison, 66 Ala. 345. There is probably a distinction in its application when a deed executed in performance of a verbal contract to sell is placed in escrow in accordance with said contract to be delivered upon the happening of a contingency and when there is no such delivery in escrow. Some of the cases specifically refer to the fact that there was a delivery in escrow with emphasis upon it. Moore, Keppel & Co. v. Ward, 71 W.Va. 393, 76 S.E. 807, 43 L.R.A.,N.S., 390, Ann.Cas.1914C, 263; Blacknall v. Parish, 59 N.C. 70, 78 Am.Dec. 239; 100 A.L.R. 210.

The distinction is probably because of the fact that when the deed is delivered in escrow pursuant to a valid contract to that effect the grantors can only withdraw the deed upon the failure of the grantee to comply with the conditions and, therefore, it is in substance a conditional delivery. Whereas if the grantors retain possession of the deed, there cannot be said to be any sort of delivery.

In our case of Jenkins v. Harrison, supra, the facts were that the parties were making an exchange of land each conveying a tract to the other. Both parties and their wives appeared before a justice of

the peace and executed a deed and the justice of the peace signed his name to the certificates and dated them and then and there offered the deeds to the respective parties, and both said, "'Keep them till tomorrow, we have not got the inventory complete.' This was all the delivery that was ever made to me (the justice of the peace). I kept the deeds after all the parties had signed for the sole purpose of dating and signing the certificates as justice of the peace. I then offered the deeds to the parties and they declined to take them. I never understood from the parties that they intended this to operate as a delivery of the deeds." That statement of the facts excludes the principle of a delivery in escrow and, therefore, the discussion of the question in that case must be considered in the light of the fact that it was not in escrow; but, as in the other cases, it was a question of whether there was a compliance with the statute of frauds without a delivery and whether such a state of facts was sufficient to justify specific performance. In the Harrison opinion it is said, as it is in the other authorities taking the same view, that, "The writing is not the contract—it is no more or less than the evidence of it, which must exist, or the contract is without legal validity or efficiency, and this evidence may be supplied at any time after the contract is completed." The opinion also observes that though signed, attested and acknowledged, so long as the grantor holds possession of the deed, the title does not pass out of him. But the question at hand was not to determine where the legal title is but whether or not there was such a contract as would justify the court in decreeing that the grantee should have the legal title. The opinion further observed that it is legal evidence of a contract binding the vendor to performance about which we are inquiring, and that according to the authorities it may be obtained from any document or instrument signed by the vendor; and it is necessary that it should be written only to furnish evidence of a contract. The Court makes a very exhaustive study of the question, citing many decisions in other jurisdictions: in some there was a deposit in escrow and some there was no such deposit.

Finally reaching the conclusion in the following words: "Without passing beyond the facts of this case, we hold, that a deed, drawn and executed with the knowledge of both parties, with a view to the consummation of the contract of sale, which, in itself, and of itself, embodies the substance, though not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the lands, though not delivered, and its delivery postponed until the happening of a future event is a note or memorandum of the contract, sufficient to satisfy the words, the spirit, and purpose of the statute of frauds." And again it was said: "It is too well settled now to admit of doubt, that when an instrument, intended to operate as a conveyance of lands, is so executed as not to pass the estate, if there be not some statutory provision which will be contravened, equity will, if the consideration has been paid, enforce it as a conveyance. * * * Upon kindred reasoning, and to accomplish the purposes of justice and the intention of the parties, these deeds, though undelivered, should be enforced as contracts for conveyances."

Our cases well settle that principle in Alabama. Hollis v. Harris, 96 Ala. 288, 11 So. 377; Sparks v. Woodstock Iron & Steel Co., 87 Ala. 294, 6 So. 195; Roney v. Moss, 74 Ala. 390; Goodlett v. Hansell, 66 Ala. 151.

The question we have been discussing again arose in Alabama in the case of Johnston v. Jones, 85 Ala. 286, 4 So. 748, 749. In that case after the deed was executed in furtherance of the contract, but without the signature of the wife of one of the grantors, it was placed in the bank to be delivered on payment of the purchase price. But the purchaser declined to make the payment on account of the failure of the wife to sign and sued for specific performance. The Court cited the case of Jenkins v. Harrison, supra, and copied from it one of the quotations which we have made above, and stated on the authority of that case, "We hold that the deeds, having been signed and acknowledged by the vendors, with a view to the consummation of the contract of sale, and sent to the bank

to be delivered on the happening of a future event, withdraw the contract from the operation of the statute of frauds." In that case the deed was delivered in escrow. That fact is stated to exist again in our case of Griel v. Lomax, 89 Ala. 420, 6 So. 741, where a deed was put in escrow and the question was the effect of its non-delivery. The Court cited the cases of Jenkins v. Harrison and Johnston v. Jones, supra, and stated that it was held in Jenkins v. Harrison, supra, that the delivery of the deed in escrow constituted a compliance with the statute of frauds. Whereas that case was not one, as we interpret it, where the deed was put in escrow, and no consideration was given to that status in the discussion of the subject.

It seems to be recognized by foreign authorities that our case of Jenkins v. Harrison, supra, is not dependent upon a delivery in escrow. The case of Gall v. Brashier, 10 Cir., 169 F.2d 704, contains an exhaustive study and analysis of the cases in various jurisdictions upon the subject, including Jenkins v. Harrison, supra, and also a Kansas case of like import, Arnett v. Wescott, 107 Kan. 693, 193 P. 377. It is pointed out that the same reasoning which was used in our case of Jenkins v. Harrison, supra, was the basis of the holding in the Kansas case. That authority discussing the Kansas and Alabama cases was an opinion by the United States Circuit Court of Appeals for the Tenth Circuit, and was undertaking to apply Oklahoma law. It was noted that in Oklahoma the decision of the supreme court of that state had only passed upon the question when the deed was delivered in escrow, but expressed the view that the trend of thought in that state was such as to anticipate that it would take the same view as the Kansas and Alabama courts took and, therefore, gave effect to it as the law of Oklahoma in that case.

As we have stated, the cases have all dealt with the question for the purpose of determining whether it satisfies the statute of frauds and to ascertain whether or not a contract which did not otherwise comply with the statute of frauds was specifically enforcible.

But appellants have eliminated the question of the statute of frauds both as to the married women and their brother. In fact insofar as the married women are concerned the bill sets up a contract in writing executed by them which includes delivery and, therefore, there is no question of the statute of frauds as to them. But as to them, the question is whether the execution of the deed by them and their respective husbands at a later time was a compliance with the requirements of our statute.

That question is affected by both sections 71 and 73, Title 34 of the Code. Section 71 gives the wife full legal capacity to contract as if she were sole, except as otherwise provided by law. Section 73, supra, provides that for a wife to effectually convey the legal title to her land her husband must assent and concur therein by joining in the execution of the conveyance in the mode prescribed by law. She cannot therefore convey the legal title without a compliance with section 73, supra, and it is specific in its requirements as to the manner in which the husband's concurrence must be manifested. But it has been held in our cases that if he does not join with her in the execution of the deed and in the manner prescribed he may do so even after the deed has been delivered, without another delivery, when it will relate back to the time of her execution of it and become effective as of that date. Yates v. McLeod, 209 Ala. 483, 96 So. 583; Murphy v. Green, 120 Ala. 112, 22 So. 122; Id., 128 Ala. 486, 30 So. 643.

There is no specific requirement of law at this time that a married woman's husband shall give his concurrence to her contract *to sell and convey lands.* Prior to the Code of 1896, what is now section 71, supra, provided that the wife's capacity to contract as if she were sole was upon the condition that her husband express his assent and concurrence thereto in writing. That requirement has not existed in that provision of the law since the Code of 1896 went into effect. The status of the law now is that a married woman can contract as if she were sole except as otherwise provided by law, and there is no

other express provision of law with respect to her contract to sell land although there is such provision with respect to a conveyance of her land. Prior to the Code of 1896, when it was necessary for the husband to express his concurrence in his wife's contracts, the question arose as to the manner in which she could execute a contract for the sale of her land in view of the fact that the law then, as now, required her husband to join with her in a conveyance of her land. The Court held in the case of Knox v. Childersburg Land Co., 86 Ala. 180, 5 So. 578, that an agreement to sell or to buy land by a married woman in writing with the assent and concurrence of the husband expressed in writing, is binding as if she were sole and enforcible by all the remedies applicable to persons sui juris. See, also, Jackson v. Knox, 119 Ala. 320, 24 So. 724.

The change in the statute under the Code of 1896, eliminating the requirement that the husband must concur in writing in all of the wife's contracts, should not serve to put a limitation upon her right, but was intended rather to broaden such right. It would be an anomaly to say that she could contract for the sale of her land without her husband's concurrence in writing in such manner as that a court of equity would enforce specific performance and compel her to execute a deed without her husband's concurrence when this could not be done voluntarily by her.

So far as a contract for the sale of land by the wife is affected by section 71, supra, the harmony of the law requires that it be also affected by section 73, supra. So that under the present terms of section 71, supra, a married woman cannot contract effectually for the sale of her land without the consent and concurrence of her husband. Cooper v. Pearce, 222 Ala. 540, 133 So. 583; Bowden v. Turner, 243 Ala. 182, 8 So.2d 849; Owens v. Lackey, 247 Ala. 537(9), 25 So.2d 423. That consent and concurrence, which must be in writing, need not be made by the husband at the time of the execution of the contract, if while that status continues he shall later express his concurrence in writing. Such later concurrences would relate back to the time of the execution of the contract by the wife so long as that contract remains outstanding.

The question which we have in this case is whether such concurrence in writing made by the husband by his joining with his wife at a later time in the execution of a deed conveying the property to the purchaser without a delivery of that deed, is a compliance with the requirement that he shall give his concurrence in writing. We see no more necessity for a delivery to the purchaser of such written concurrence than for the delivery of a deed in consummation of an agreement to sell in order to comply with the statute of frauds. It is his concurrence in writing in the one instance and, in the other, it is that the contract be evidenced by a writing. In neither instance is it necessary to deliver to the purchaser the evidence which the statute requires to satisfy its terms. It is the existence of evidence which is required by law. When the statute of frauds is in question, as our cases hold, the writing is not the agreement and, therefore, the writing is not delivered to constitute the agreement. The agreement between the parties is otherwise expressed and the writing is only evidence of it, so likewise as to the concurrence by the husband in the contract of the wife. The evidence of that concurrence must be in writing signed by him, and it is immaterial who holds that evidence in possession or whether it was made after the wife undertook to contract or at the time she did so.

We do not attach any importance to the fact that Boulet's acceptance was by telegram sent prior to the date of the written offer to purchase made by complainant. The telegram of acceptance shows that there had been negotiations between them. His acceptance was evidently in furtherance of such negotiations and meant that it was a continuing offer of acceptance to be effective as such when complainant made a proposal in accordance with their understanding. It is therefore of no consequence that the telegram was sent prior to the time when the written pro-

posal was made by complainant. Not having been withdrawn prior to such proposal it operated upon the proposal when it was made later. Those circumstances show that the deed was pursuant to a previous understanding between them, and completes the evidence of a contract to sell according to its terms. Such was the situation in Gall v. Brashier, supra. We think the evidence shows there was a contract to sell and that the deed is a part of the transaction along with the other circumstances to manifest the existence of the contract and its terms.

Since we think the bills shows a contract binding on all three of the tenants in common owning the property, we need not undertake to answer an inquiry dependent upon a finding that some are bound and others may not be, as discussed in the cases. Pearce v. Third Avenue Improvement Co., 221 Ala. 209, 128 So. 396; Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A.L.R. 1153; McCreary v. Stallworth, 212 Ala. 238, 102 So. 52; Johnston v. Jones, 85 Ala. 286, 4 So. 748.

■ We think the bill is not subject to demurrer addressed to it as a whole, for that the aspect of it which seeks specific performance is not subject to the grounds of demurrer which are insisted upon by appellants. But it also seeks damages. It is said in the case of Zimmern v. Williams, 190 Ala. 442, 67 So. 277, that a bill for specific performance is not subject to demurrer because it seeks to recover damages which cannot be allowed.

■ But in this case the bill makes allegations of facts on which it bases a claim for damages which, as we interpret it, resulted from delay in performing the contract, even though the court may specifically perform it as prayed for. Such claim is made in a separate aspect and the demurrer is addressed to that aspect. The general rule is that neither the vendor nor vendee is entitled on specific performance to damages for nonperformance. Coral Gables v. Patterson, 231 Ala. 649, 166 So. 40; Pearce v. Third Avenue Improvement Co., supra; Fuller v. Totten, 222 Ala. 174, 131 So. 435; McCreary v. Stallworth, 212 Ala. 238, 239, 102 So. 52.

But there are some authorities which justify a claim for such damages as proximately result from an unjustified delay in performing. 58 Corpus Juris 1240, section 592; or from the failure to observe some other recognized right, notwithstanding a specific performance. Zimmern v. Williams, supra; Hooper v. Savannah & Memphis R. Co., 69 Ala. 529.

■ The claim for damages here sought to be recovered is too remote and is not shown to have proximately resulted from any breach of duty to complainant, which will not be redressed by specific performance. Complainant would have no right to put himself in a position where damages would result from delay after a time when the vendors had declined to perform the contract, or before a binding contract is entered into.

Without undertaking further to analyze this claim for damages, we think the bill does not show a right to it. Since that is made a distinct aspect of the bill by allegations and prayer for special damages, to which the demurrer is addressed, we think the demurrer raises a material inquiry and that it is well taken and should have been sustained. It is so ordered by this Court. The demurrer was properly overruled in all aspects, except insofar as the bill seeks to recover damages. The decree is affirmed in part, reversed and rendered in part and remanded.

Affirmed in part, reversed and rendered in part and remanded.

BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.